NOT DESIGNATED FOR PUBLICATION

No. 121,335

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROBERT DEAN MOUNKES, Guardian and Conservator for
DOROTHY A. MOUNKES,
*Appellee*,

v.

LEE WAYNE MOUNKES and CAROL R. RANKIN,
*Appellants*,

and

DUANE D. MOUNKES, Deceased, DUANE D. MOUNKES LIVING TRUST,
DONALD GENE MOUNKES, ROBERT DEAN MOUNKES,
*Defendants*.


MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed August 21, 2020.
Reversed and remanded with directions.

*Thomas A. Krueger*, of Krueger Law Office, of Emporia, and *Shane A. Rosson*, of Triplett Woolf
Garretson, LLC, of Wichita, for appellants.

*Stephen J. Atherton*, of Atherton & Huth, of Emporia, for appellee.


Before MALONE, P.J., ATCHESON and SCHROEDER, JJ.


ATCHESON, J.: This distinctly odd quiet title action required the Lyon County
District Court to determine the ownership of an 80-acre tract of land that remained in a
trust when, following the death of the trustee in 2014, nobody could find a copy of the

1

trust instrument. Absent an applicable statute or any controlling case authority, the district court decided the trust ought to be treated as void from its inception, so the husband and wife who set up the trust—with the husband as trustee and, in 1997, deeded a quarter section to the trust—remained the owners of the 80-acre tract notwithstanding their contrary intent and actions. We find that to be a needlessly broad remedy, potentially casting a shadow on the trust's 2001 transfer of a different 80-acre tract to the couple's daughter and her husband.

The Restatement (Third) of Trusts § 8 provides more carefully tailored relief that better addresses this situation. Under Restatement (Third) of Trusts § 8, the trust failed when the trust instrument could not be found, and it then became void. A resulting trust arose by operation of law in favor of the husband and wife, as the transferors of the land into trust. The timing of the trust's legal failure arguably makes a difference, especially with respect to the 2001 land transfer from the trust. The Kansas Supreme Court has looked to previous editions of the Restatement for authoritative guidance on trust principles. See *In re Estate of Somers*, 277 Kan. 761, 767-68, 89 P.3d 898 (2004); *In re Estate of Sanders*, 261 Kan. 176, 183, 929 P.2d 153 (1996). We do likewise in this case and rely on Restatement (Third) of Trusts § 8. We, therefore, reverse the district court's judgment and remand for further proceedings including both a finding the trust was void as of May 9, 2018, when that judgment was entered, and the imposition of a resulting trust as of that date.

FACTUAL AND PROCEDURAL HISTORY

In 1997, Duane and Dorothy Mounkes, a married couple, conveyed a quarter section (160 acres) by warranty deed to the Duane D. Mounkes Living Trust. The deed was recorded with the Lyon County Clerk's Office. The parties in this case agree the legal description of the land is:  The West Half of the SW1/4 of Section 32, Township 16 South, Range 11 East of the 6th P.M., Lyon County, Kansas. Four years later, Duane

Mounkes, as the trustee of the Duane D. Mounkes Living Trust, conveyed the east half of that quarter section (80 acres) by warranty deed to Carol Rankin and William Rankin. The deed was duly recorded. Carol Rankin is Duane and Dorothy's daughter, and William is her husband.

The west half of the quarter section apparently remained property of the trust. Duane Mounkes died in 2014. Dorothy has since been adjudged incompetent, and the Mounkes' son Robert has been appointed her guardian and conservator.

In 2017, Robert filed this quiet title action on behalf of Dorothy to determine ownership of the west half of the quarter section. The petition named as defendants the children of Duane and Dorothy, including Carol Rankin, along with others potentially having some legal interest in that tract. Carol Rankin's interest was described as flowing from her status as the daughter of Duane and Dorothy. William Rankin was not a named defendant. Quiet title proceedings are *in rem* actions, meaning the district court has authority to decide legal interests in only the real property identified in the petition. See *Sebree v. Board of County Comm'rs of Shawnee County*, 251 Kan. 776, Syl. ¶ 6, 840 P.2d 1125 (1992) ("In a quiet title action, the court has jurisdiction only of issues pertaining to the property for which quiet title is sought."); *Neagle v. Brooks*, 373 F.2d 40, 43 (10th Cir. 1967) (same, construing Kansas law). The ownership of the east half of the quarter section the trust conveyed to Carol Rankin and William Rankin is not directly at issue in this case.

Nobody has been able to find the document creating the Duane D. Mounkes Living Trust and describing its operation. The original is missing, and the whereabouts of a copy is anybody's guess. The accountant who may have prepared the trust is dead, and his office records could not be located. The absence of the trust instrument is, to say the least, a complicating circumstance (and likely the one prompting this action in the first place). A trust instrument commonly would describe the replacement of a trustee who can

3

no longer serve in that capacity, what happens if a beneficiary dies, specific events triggering termination, and a process for winding up the trust and disposing of its remaining assets or corpus. Neither the parties nor the district court had any indication about those mechanics of the Duane D. Mounkes Living Trust or even the identity of the trust beneficiaries.

The parties submitted a detailed stipulation of facts to the district court, along with the deeds and related documents. As we have indicated, Kansas law furnished no direct answer about how to handle a situation in which a trust holds assets but the governing instrument is AWOL. Carol Rankin and Lee Wayne Mounkes, another child of Duane and Dorothy, argued the trust failed and the west half of the quarter section should have passed by intestate succession upon Duane's death, presumably resulting in a half interest going to Dorothy with the balance divided among the children.

The district court filed a short memorandum decision on May 9, 2018, finding the Duane D. Mounkes Living Trust "is not a valid trust under Kansas law." Having found the trust void from its inception, the district court concluded the deed from Duane and Dorothy Mounkes conveying the quarter section to the trust in 1997 had "no effect." As a result, Duane and Dorothy Mounkes continued to hold the land as joint tenants with a right of survivorship. And on Duane's death, Dorothy succeeded to his interest.

The district court cited no controlling or persuasive authority for its conclusion and relied on the inability of anyone to discern the operative terms of the trust. Although not explicitly stated in the memorandum decision, the district court's ruling effectively quieted title to the west half of the quarter section in Dorothy Mounkes. Carol Rankin and Lee Wayne Mounkes filed a motion for reconsideration that the district court denied in May 2019. They have appealed.

On appeal, we confront precisely the same issue the district court faced:  What should be done with real estate deeded to a trust when the trust instrument cannot be found years later? The parties stipulated to relevant facts in the district court and submitted various documents related to their stipulation. Because the facts are undisputed and we can evaluate the documents just as well as the district court, we are effectively reviewing a legal conclusion. We do so without any particular deference to the district court's decision. See *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1207, 308 P.3d 1238 (2013) (appellate court exercises unlimited review over "interpretation and legal effect of written instruments"); *In re Trust D of Darby*, 290 Kan. 785, 790, 234 P.3d 793 (2010); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 258-59, 261 P.3d 943 (2011) (legal effect of undisputed facts presents question of law decided without deference to district court).

Dorothy Mounkes contends K.S.A. 58a-412, permitting modification or termination of a trust because of unanticipated circumstances, supports the district court's ruling. We don't read the statute as granting a district court the authority to declare a trust void from its inception and, thus, without any legal effect. Rather, the statute permits a district court to modify or even terminate a trust when legal or factual circumstances render the continuing operation of the trust impracticable or impossible, thereby thwarting its purpose. The statute affords a district court the authority to approximate the settlor's intent when an unexpected external event thwarts the stated terms of the trust. See *In re Trust D of Darby*, 290 Kan. at 794-95. The point is underscored in K.S.A. 58a-412(c), describing how a court-ordered termination of a trust must be carried out:  "[T]he trustee shall distribute the trust property in a manner consistent with the purposes of the trust."

The process set out in K.S.A. 58a-412 does not fit the circumstances of this case precisely because nobody could find the document establishing the Duane D. Mounkes Living Trust and, therefore, could not determine how the trust was to operate or its purpose. We doubt the loss of the trust instrument itself (and the absolute unavailability of its terms) entails the sort of event that triggers K.S.A. 58a-412 in the first place. A district court could not presume to modify a trust to further its purpose in that circumstance, since the terms necessarily inform the purpose and any modification would be no more than a blind guess. Moreover, here, the only apparent trustee of the trust had died and, therefore, couldn't distribute the trust property—the west half of the quarter section—in any manner, let alone in keeping with the trust's unknown purpose.

We might infer that Duane and Dorothy retained some beneficial interests in the real property in the trust, such as life estates. But that, too, would be a guess. The district court neither cited nor relied on K.S.A. 58a-412. We see that reticence as well founded.

Carol Rankin and Lee Wayne Mounkes cited Restatement (Third) of Trusts § 8 in the district court, but they misconstrued its application in this situation. The district court chose not to draw on the Restatement in fashioning its remedy.

Again, as we have indicated, the district court went too far in holding the Duane D. Mounkes Living Trust never went into effect. The record evidence shows otherwise. The trust existed in 1997, since Duane and Dorothy deeded the quarter section to it. The taxes on the land were paid after that, further indicating the trust was functioning. The trust later deeded the east half of the quarter section to Carol Rankin and William Rankin without objection from Duane or Dorothy—yet another indication the trust had been established and was operating in conformity with Duane's direction as trustee. None of the parties presented evidence in this case to refute those circumstances.

6

In that light, the district court's decision to find the trust void from its inception amounts to a legal fiction drawn contrary to the record evidence. The district court presumably saw the fiction as a convenient one in the absence of either any reliable statement of the operative language of the trust or a way to reasonably reconstruct the trust instrument. As convenient as that approach may have been, its deviation from the evidence also led to an unnecessarily extreme result. Although the ownership of the east half of the quarter section the trust conveyed to Carol Rankin and William Rankin is not directly at issue in this quiet title action, the district court's ruling would—if it were a correct statement of the law—call into question their claim to that tract. Dorothy could seek to reclaim the east half through another quiet title action. And the very existence of the district court's ruling in this case might cloud the Rankins' title.

Properly applied, Restatement (Third) of Trusts § 8 averts that extreme outcome and fashions a reasonable remedy. Our search for controlling Kansas authority on what to do with a trust when the trust instrument itself has vanished was no more fruitful than the efforts of the parties and the district court. But our reliance on the Restatement (Third) of Trusts as a source of guiding principles has a strong foundation in Kansas caselaw. The Kansas Supreme Court has not just cited the Restatement of Trusts to fill in gaps in this state's law but has identified it as a preferred and authoritative outline on the subject. See *Estate of Somers*, 277 Kan. at 767 ("When there is no law directly on point, Kansas courts turn to the Restatement of Trusts."); *Estate of Sanders*, 261 Kan. at 183 ("[W]e have often turned to the guidance of the Restatement of Trusts."). The Kansas Uniform Trust Code also anticipates the use of "[t]he common law of trusts and principles of equity" to fill in where the statutory scheme is silent on a matter. K.S.A. 58a-106.

The blackletter principle in Restatement (Third) of Trusts § 8 states that if the owner transfers property with the intent that the transferee retain the property in trust and "the intended trust fails," the transferee then holds the property in a "resulting trust" for the original owner or the owner's successors in interest. Restatement (Third) of Trusts § 8

7

(2003). Consistent with the resulting trust, the property should then be returned to the original owner.

The application of the rule is illuminated in the Restatement comments. So if the trust "fails . . . at a later time," the trustee "then holds the trust property . . . upon a resulting trust" for the owner. Restatement (Third) of Trusts § 8, comment a. Even more pointedly here, if property is transferred with "a proper manifestation of the intention that the property be held by the transferee in trust but without proper manifestation of the intended beneficiaries or purposes," the Restatement authors recognize "a resulting trust arises." Restatement (Third) of Trusts § 8, comment h. And they offer as an illustrative example a landowner transferring property by deed to a party designated to take it "'as trustee'" or "'in trust'" when nothing sets forth the intended beneficiaries, preventing the trust from being carried out. In that situation, a resulting trust arises in favor of the original owner. Restatement (Third) of Trusts § 8, comment c, illustration 1; comment h. Resulting trusts are creatures of equity and should be recognized to secure a just or fair outcome. See *Stauth v. Stauth*, 2 Kan. App. 2d 512, 516, 582 P.2d 1160 (1978) ("resulting trusts . . . are matters of equity" and may not be precluded by the statute of frauds or statutes of limitations); *Burleson v. McCrary*, 753 S.W.2d 349, 352 (Tenn. 1988) ("Resulting trusts and constructive trusts are both created by courts of equity in order to satisfy the demands of justice."); 76 Am. Jur. 2d, Trusts § 136 ("[A] court of equity, shaping its judgment in the most efficient form, will decree a resulting trust in order to prevent a failure of justice.").

Following the directives of Restatement (Third) of Trusts § 8, we find Duane and Dorothy intended to transfer the quarter section to the Duane D. Mounkes Living Trust with Duane serving as trustee. The trust later failed when no one could identify the beneficiaries or the purpose of the trust because the foundational instrument could not be located. Consistent with the Restatement (Third) of Trusts § 8, a resulting trust arose at that time covering the west half of the quarter section as the remaining trust property or

corpus. Restatement (Third) of Trusts § 8, comment b (rule applies when "a transfer has been properly made to establish an express trust [and] the intended trust or some interest therein may fail because no beneficiary has been named"). The resulting trust would have been for the benefit of Duane and Dorothy as the owners who conveyed the land to the Duane D. Mounkes Living Trust. The district court, in turn, had the authority to order the west half of the quarter section conveyed back to them or their successors in interest consistent with the resulting trust.

We offer several additional observations about the effect of the Restatement rule in this case. First, the trust failed when there was either a district court finding or a consensus of the parties that the trust instrument could not be located and no other means furnished an adequate basis to reconstruct its terms. We have more or less arbitrarily dated the failure as of the district court's May 9, 2018 order. But the failure would not have preceded Duane Mounkes' death in 2014, since nobody went looking for the trust instrument before then. The precise date between those two points makes no legal difference.

Second, after Duane Mounkes died, the trust likely was without a trustee. Absent the trust instrument, there was no way to know. And the trust may not have included a provision for replacing Duane as trustee if he died or became incapacitated. In that situation, the district court had the statutory authority to appoint a new trustee. See K.S.A. 58a-704(c) (district court may fill trustee vacancy as necessary when trust fails to designate successor and beneficiaries cannot unanimously agree on successor). The successor trustee would then have the authority to convey the west half of the quarter section under the resulting trust. We suppose, too, the district court had the authority to appoint someone to oversee the resulting trust and to convey the west half of the quarter section in conformity with any further orders.

9

As we have recognized, a resulting trust may be imposed to do equity in a given case. Here, consistent with the Restatement (Third) of Trusts § 8, that would call for restoring the west half of the quarter section to Duane and Dorothy as joint tenants with a right of survivorship, thereby recreating the real property interest they held immediately before their conveyance of the full quarter section to the trust. In turn, since the Duane D. Mounkes Living Trust conveyed the east quarter section before Duane died, that transfer would be undisturbed. After Duane's death, Dorothy, as the surviving spouse, would have an equitable right to a fee-simple interest in the west half of the quarter section by virtue of the resulting trust. Under the Restatement (Third) of Trusts § 8, Dorothy would be Duane's successor in interest to his interest in the tract as a joint tenant with a right of survivorship.

As we have already indicated, Carol Rankin and Lee Wayne Mounkes incorrectly suggest the Restatement rule would treat Duane and Dorothy's conveyance of the quarter section to the trust as stripping away their joint tenancy, so the resulting trust would apply to a tenancy in common. The rule, however, aims to restore land to the transferors if a trust later fails without altering the character of the property interests, and a resulting trust provides the flexibility in equity to accomplish that objective. Restatement (Third) of Trusts § 8, comment h (when resulting trust arises, "equitable interests . . . revert, and the transferee holds the property on resulting trust for the transferor"). Accordingly, when Duane died, Dorothy equitably succeeded to his interest in the west quarter section, since they had held the land in joint tenancy with a right of survivorship. And nothing suggests they would have intended otherwise had they retained the land rather than conveying it to a trust that later failed. To treat the west half of the quarter section otherwise would be distinctly inequitable or unjust.

Finally, the rule in Restatement (Third) of Trusts § 8 creating resulting trusts has two exceptions. A resulting trust would not arise if the owner transferring the property "manifested an intention" to the contrary or if the trust failed as "an illegal transaction"

10

and policy considerations favored denying relief to the transferor in preference to the otherwise unjust enrichment of the transferee. Neither exception applies here, so we don't explore them further.

In summary, then, we reverse the district court's ruling and remand with directions. On remand, the district court should find the Duane D. Mounkes Living Trust failed after Duane's death when it became apparent the trust instrument could not be found. The district court should impose a resulting trust on the west half of the quarter section in favor of Duane and Dorothy Mounkes as joint tenants with a right of survivorship, then effectuate the conveyance of legal title to that tract to Dorothy as the survivor, and take such other actions as may be necessary and consistent with this opinion.

Reversed and remanded with directions.